**United States District Court**
**Northern District of Alabama**
**Southern Division**

01 SEP 26  4M 10: 05

. . . . . . . . . COURT
N.D. OF ALABAMA

| | |
|---|---|
| In re: | ] |
| **Silicone Gel Breast Implants Products** | ] Master File No. CV-92-N-10000-S |
| **Liability Litigation (MDL 926),** | ] |
| | ] |
| **United States of America,** | ] |
| | ] |
| v. | ] CV-00-N-0837-S |
| | ] |
| **Baxter International, Inc., et al.,** | ] |

ENTERED

SEP 2 6 2001

**Memorandum of Opinion**

The United States[1] filed this action on March 30, 2000, against Baxter International

Inc., Baxter Healthcare Corporation, Bristol-Myers Squibb Company, Minnesota Mining &

Manufacturing Co., Union Carbide Chemical & Plastics Co., Union Carbide Corporation

(collectively, the "RSP Defendants"), and Edgar C. Gentle, III, in his official capacity as the

Escrow Agent for the Settlement Fund established in *In re Silicone Gel Breast Implant*

*Products Liability Litigation* (MDL 926), No. CV-92-N-10000-S (N.D. Ala.)(the Escrow

Agent).

The matter is presently before the Court on motions of the RSP Defendants, the

Escrow Agent, and intervenor Plaintiffs' Steering Committee (the "PSC")[2], to dismiss the

complaint pursuant to Fed. R. Civ. P. 12(b)(6). On September 14, 2000, the Court heard oral

---

[1] The United States brought this action on behalf of the Department of Health and Human Services, Health Care Financing Administration ("HCFA") the Indian Health Service ("IHS"), the Department of Defense ("DoD"), and the Department of Veterans Affairs ("VA").

[2] The PSC is a committee appointed by this court in 1992 to coordinate discovery and other pretrial proceedings on behalf of the various plaintiffs in MDL 926. *MDL Revised Case Management Order No. 5* (Sept. 15, 1992) at ¶ 7(b).

arguments on the motions and provisionally granted the PSC's motion to intervene.[3] For the reasons discussed below, the motions to dismiss will be granted in all respects.

## I.    Standard of Review.

A plaintiff need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The complaint is sufficient if it gives a defendant notice of the claims by which the plaintiff seeks to hold the defendant liable.  A plaintiff is not required "to set out in detail the facts upon which he bases his claim." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Accordingly, "the threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is exceedingly low." *Quality Foods de Centro America v. Latin American Agribusiness Dev. Corp.*, 711 F.2d 989, 995 (11th Cir. 1983).   "The purpose of a Rule 12(b)(6) motion is to test the facial sufficiency of the statement of claim for relief." *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1368 (11th Cir. 1997). A court should only grant such a motion "when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998) (quoting *Conley*, 355 U.S. at 45-46).

In reviewing a defendants' Rule 12(b)(6) motion to dismiss, the Court must "take the material allegations of the complaint and its incorporated exhibits as true . . . and liberally construe the complaint in favor of the plaintiff."  *Burch v. Apalachee Community Mental Health Servs., Inc.*, 840 F.2d 797, 798 (11th Cir. 1988) (en banc), *aff'd sub nom. Zinermon*

---

[3] Upon due consideration, the Court finds the PSC Motion to Intervene is due to be granted.  The PSC has a substantial interest in the United States' claims that the RSP Settlement Fund and the Common Benefit Fund are responsible for paying the United States' claims out of fund monies.

*v. Burch*, 494 U.S. 113 (1990).  The Court's Rule 12(b)(6) review  "is limited primarily to the face of the complaint and attachments thereto." *Brooks*, 116 F.3d at 1368.

When this court is called upon to construe a statute, the first question must always be whether Congress has directly spoken to the precise question at issue so that the intent of Congress is clear. *Chevron U.S.A., Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984). If the statute is silent or ambiguous with respect to a specific issue, an agency's construction that is based on a permissible construction of the statute is controlling.  *Id.*     However, the litigation position of agency counsel that is wholly unsupported by regulations, rulings, or administrative practice is not entitled to deference. *Bowen v. Georgetown University Hosp.*, 488 U.S. 204, 211 (1988).

**II.     Statement of Facts.**

     **A.     Scope.**

The facts set forth below are based upon the allegations of the complaint and upon this court's public record subject to judicial notice under Fed. R. Evid. 201.  A court may take judicial notice of its own records in 12(b)(6) proceedings. *ITT Rayonier, Inc. v. United States*, 651 F.2d 343, 345 n.2 (11th Cir. 1981). *See also Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1276 (11th Cir. 1999)(approving practice of judicially noticing publicly filed documents with SEC on a motion to dismiss) *and Wells v. United States*, 318 U.S. 257 (1943)(judicial notice of court records is appropriate).  This court's records subject to judicial notice include documents filed in *In re Silicone Gel Breast Implant Products Liability Litigation* (MDL 926), No. CV-92-N-10000-S (N. D. Ala. 1992) and in *Lindsey v. Dow Corning Corp.*, No. CV-94-N-11558-S (N.D. Ala. 1994). As public records, they contain facts

"capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

**B.    The Facts**.

On June 25, 1992, the Judicial Panel on Multidistrict Litigation transferred all pending federal court actions in which the plaintiffs alleged they had been injured by silicone gel breast implants to the Northern District of Alabama. *See In re Silicone Gel Breast Implants Prods. Liab. Litig. (MDL 926)*, 793 F. Supp. 1098 (J.P.M.L. 1992). In April 1994, Judge Sam Pointer, Jr.[4] of this court provisionally certified *Lindsey v. Dow Corning, et al.*, as a class action for settlement purposes under Fed. R. Civ. P. 23(b)(3).   *Lindsey v. Dow Corning Corp.*, No. CV 94-P-11558-S (N.D. Ala.). By Order 27, entered on December 22, 1995, Judge Pointer approved the "Bristol, Baxter, 3M, McGhan and Union Carbide Revised Settlement Program" (the "RSP") for the *Lindsey* class.

The RSP is funded by the settling MDL 926 defendants, who "pay into the fund . . . such amounts as, from time to time during the 15 year period of the program, are estimated . . . to be needed . . . to pay benefits. . . ." Order No. 27, ¶ J.  The RSP's benefits to class members include a payment to defray the cost of explant surgery and additional benefits for those claimants with certain diseases or injuries. Claimants are not required to prove a causal link between their breast implants and the claimed disease or condition. *See generally,* Order No. 27.

---

[4]The case was originally assigned to Chief Judge Sam C. Pointer in 1992 and was managed by him until his retirement from the bench in early April 2000. Management responsibility of the remaining cases in MDL 926 was transferred to the undersigned.

The RSP Defendants have also entered into settlements with many plaintiffs who opted out of the *Lindsey* class action and the RSP. Compl. ¶¶ 21-22.

Under the terms of Order 27 in MDL 926, a "Common Benefit Fund" was also established. The Common Benefit Fund was and is used to compensate and reimburse counsel who provided services for the "common benefit" of the *Lindsey* class. When RSP Defendants pay settlement amounts into the RSP, they pay a six percent surcharge that is designated as the Common Benefit Fund, and held as part of the RSP fund. Plaintiffs who settle or obtain judgment in an opt-out lawsuit similarly pay 6% of the settlement amount into the Common Benefit Fund. Notice of Revised Settlement Program, ¶ 28. In Order No. 13A (December 28, 1999), the Court ordered a 2% pro-rata "rebate" of excess funds in the Common Benefit Fund and subsequent surcharge amounts have been limited to 4 percent.

The United States filed its complaint in this action more than four years after the court's approval of the *Lindsey* class settlement.[5]   The United States avers it, through HCFA, DoD, VA and IHS, has furnished or paid for medical care and treatment related to breast implants for claimants who were or will be compensated through the RSP. This is a suit to recover the costs of that medical care from the funds. The United States claims the defendants are liable to reimburse the government for the medical care of breast implant claimants despite the defendants' previous settlement payments to breast implant claimants.

---

[5]The United States claims it is not subject to the defense of laches in enforcing its rights. *United States v. Summerlin*, 310 U.S. 414, 416 (1940); *United States v. Fernon*, 640 F.2d 609, 612 (5th Cir. 1981).   The United States also vigorously disputes any assertions of delay and inaction on its part.

The United States cannot sue to recover medical costs unless explicitly authorized by Congress. *United States v. Standard Oil Co.*, 332 U.S. 301 (1947). The United States asserts that the present suit is appropriate and authorized under the Medicare Secondary Payer statute, 42 U.S.C. § 1395y(b) and/or the Medical Care Recovery Act, 42 U.S.C. §§ 2651-2653.

## III.    The  Medicare Secondary Payer Statute.

The Medicare Secondary Payer statute (hereinafter, the "MSP" statute) is a series of amendments designed to lower Medicare costs by making Medicare coverage secondary to coverage provided by private insurance programs.  The MSP statute is codified at 42 U.S.C. § 1395y(b).  When a third party payer has made or can reasonably be expected to make payment to a Medicare beneficiary, Medicare's payment is "conditional" on reimbursement to the Medicare Trust Fund.  42 U.S.C. § 1395y(b)(2)(B)(i).  To ensure that the required reimbursement occurs, the United States may sue to recover conditional Medicare payments "when notice or other information is received that payment for such item has been or could be made under" a pertinent plan or policy.  42 U.S.C. § 1395y(b)(2)(B)(ii); *see also* 42 C.F.R. § 411.24(e) & (g).  The defendants assert that the United States cannot bring suit under the MSP without identifying the persons who received Medicare benefits and the "items" or "services" provided by the government.

The MSP statute provides in pertinent part:

> In order to recover payments under this subchapter for such an item or service, the United States may bring an action against any entity which is required or responsible (directly, as a third-party administrator, or otherwise) to make payment with respect to such item or service (or any portion thereof) under a primary plan (and may, in accordance with paragraph (3)(A) collect

double damages against that entity), or against any other entity (including any physician or provider) that has received payment from that entity with respect to the item or service and may join or intervene in any action related to the events that gave rise to the need for the item or service.

42 U.S.C. § 1395y(b)(2)(B)(ii).  The statute further provides:

The United States shall be subrogated (to the extent of payment made under this subchapter for such an item or service) to any right under this subsection of an individual or any other entity to payment with respect to such item or service under a primary plan.

42 U.S.C. § 1395y(b)(2)(B)(iii).

## A.    The Government Has Identified Neither the Medicare Recipients Nor Services It Provided for Which It Claims Reimbursement.

The defendants have asserted an overarching challenge to all of the government's MSP claims, arguing that the United States must identify the individuals who received government benefits for breast implant-related medical conditions and specify the services that were provided to those individuals.

The United States claims it need not specify the names of the individual claimants who have received Medicare benefits because it is bringing a direct, independent action pursuant to § 1395y(b)(2)(B)(ii) rather than a subrogation action under § 1395y(b)(2)(B)(iii).

However, in Count IV, the United States claims "reimbursement as a subrogee of those Claimants who are Medicare beneficiaries and . . . repayment of its conditional Medicare payments from all future disbursements from the MDL Settlement Fund and/or the Common Benefit Fund."  Compl. ¶¶ 66-68.  To proceed in a subrogation action, the subrogee must identify its insureds.  *Zinman v. Shalala*, 67 F.3d 841, 844 (9th Cir. 1995)(under the right of subrogation, HCFA has the right to "be put in the legal position of

the beneficiary in order to recover from third parties who are legally responsible to the beneficiary for a loss"); *Health Care Serv. Corp. v. Brown & Williamson Tobacco Corp.*, 208 F.3d 579, 581 (7th Cir. 2000). Because the United States has not identified the individual beneficiaries for whom it claims reimbursement, and apparently cannot do so, its subrogation claim asserted in Count IV must be dismissed.

The remaining MSP claims, brought as direct actions under subsection (b)(2)(B)(ii), must be dismissed for the same reasons. A direct action under subsection (b)(2)(B)(ii) permits the government to recover only what the primary provider "is required or responsible . . . to pay with respect to [an] item or service" provided to the [Medicare] beneficiary. 42 U.S.C. § 1395y(b)(2)(B)(ii). Accordingly, an essential element of the government's MSP direct action against a primary payer is the proof that the primary payer is "required or responsible" to pay for "items or services" provided to a Medicare beneficiary. The relationship between the Medicare beneficiary and the primary provider is the foundation upon which the government's claim rests and no matter whether the government pursues a direct action or a subrogation action under the MSP, the government stands exactly in the beneficiary's shoes when recovering from available insurance funds. *Waters v. Farmers Tex. County Mut. Ins. Co.*, 9 F.3d 397, 400-01 (5th Cir. 1993).

A complaint must show that the pleader is entitled to relief, Fed. R. Civ. P. 8(a), and a complaint based on "conclusory allegations and unwarranted deductions of fact" is subject to dismissal under Rule 12(b)(6). *South Fla. Water Mgt. Dist. v. Montalvo*, 84 F.3d 402, 408 n.10 (11th Cir. 1996). Because there is no distinction for pleading purposes between the United States' direct action and its subrogation action under (b)(2)(B)(iii), the

United States must (1) identify its Medicare beneficiaries; (2) specify the medical items or services it provided; and (3) plead and prove that the defendants are "required or responsible" to make the primary payment with respect to that beneficiary and those medical items or services. *City of Birmingham v. American Tobacco Co.*, 10 F. Supp. 2d 1257 (N.D. Ala. 1998) (Pointer, C.J.) (suit brought pursuant to state statute providing for either direct or subrogated action required particulars about individual employees and medical services). "If the United States is unable to provide even this basic threshold information, it cannot possibly provide the additional information necessary to prove its claim, such as: the type of medical treatment provided, why the treatment was necessary, the costs of treatment. . . ." *In re Dow Corning Corp.*, 244 B.R. 705, 713 (E.D. Mich. 1999) (Amended Opinion Regarding Cramdown on Class 15).[6]  Accordingly, the United States' MSP claims are due to be dismissed because it must, at a minimum, identify the Medicare beneficiaries who have received benefits from the defendants.[7]

---

[6] The RSP Defendants also point out that the present proceeding subverts the administrative rights of claimants to challenge the reimbursement request and to petition the government to waive its claim. *See* 42 U.S.C. § 1395y(b)(2)(B)(iv); *Zinman v. Shalala*, 835 F. Supp. 1163, 1170-72 (N.D. Cal. 1993) (fundamental principles of due process require that the Government directly inform beneficiaries of their right to seek waiver), *aff'd* 67 F.3d 841 (9th Cir. 1995). The United States counters that individual beneficiaries may seek waivers, but fails to explain how the procedure would work when the individual beneficiaries are not identified and the claim is against the tortfeasor.  The beneficiaries are interested parties, since a third-party payer who is required to reimburse Medicare can attempt to recover its original payment from the recipient. *HIAA v. Shalala*, 23 F.3d 412, 418 n.4 (D.C. Cir. 1994).

[7] *And see United States v. Philip Morris, Inc.*, 2001 WL 862645, *4 (D.D.C. July 27, 2001) (the government's independent right to recover under the MCRA, 42 U.S.C. § 2651(a), is not independent in the sense that it requires the government to show the existence of persons injured by a tortfeasor, and as existence of legally injured person is a prerequisite for and an essential element of the government's MCRA claim, it must be pleaded in the complaint). This court agrees that the government cannot proceed with its MCRA claims until it pleads the names of the injured parties for whom it claims to have provided medical care.

### B.    Fairness.

Although it does not specifically assert a claim of estoppel or waiver, the United

States argues that its inability to plead the names of the Medicare recipients who received

a breast implant settlement is the fault of the defendants because they structured the RSP

settlement to include confidentiality provisions.[8]

The court is not sympathetic to the United States' attempt to make the defendants

responsible for its inability to comply with the requirements of the MSP statute or with the

pleading requirements of Fed. R. Civ. P. 8(a).  The court observes that the United States

was not limited to its statutory remedy in this case since the RSP claims administrator, who

is a special master appointed by this court, has established procedures to process

insurance reimbursement claims like the one now asserted by the United States.   The

United States eschews the administrator's procedures, arguing it is not bound by the

settlement terms and its statutory rights cannot be altered by the court.

The court heartily agrees with the proposition that it cannot force the United States,

or any other insurer, to make its claim through the claims office.  However, the availability

of an alternative avenue by which the government could have obtained the relief it seeks

---

[8]To the extent the United States has raised a factual question regarding the RSP Defendants' intent, the court will assume the defendants intended to avoid obtaining knowledge about the identities of the claimants for the purpose of this motion to dismiss.  The court observes that, unless the United States establishes that the defendants were required by statute to collect such information, any reluctance on the part of the RSP defendants to assume the responsibility for obtaining knowledge is not relevant to the United States' claims.  Furthermore, there is no factual basis asserted in the complaint for the United States' argument that the defendants inserted confidentiality provisions in the RSP settlement for the explicit purpose of cheating the government of its reimbursements.  The notion defies common sense in the context of this litigation, which involved sensitive and confidential medical issues for the plaintiff class.  Moreover, like all class settlements, this settlement was not the unilateral product of the defendants but was the result of input from all of the parties and intensive judicial oversight.  Fed. R. Civ. P. 23(e).

certainly diminishes any claim that the government should obtain any special relief from the statutory requirements.   Since the United States has elected to pursue its claim via the litigation procedures set out by statute, it will not now be heard to complain about its inability to comply with the terms of those procedures.

## IV.   The MSP Claims Against the RSP Defendants - Counts I, II, III and V.

### A.   Counts I and II - Claims Brought Pursuant to the "Double Payment" Regulation.

The so-called "double payment" regulation provides, in pertinent part:

(i)  Special rules.

(1) In the case of liability insurance settlements and disputed claims under employer group health plans and no-fault insurance, the following rule applies:  If Medicare is not reimbursed [by the beneficiary or other party receiving payment] as required by paragraph (h) of this section, the third party payer must reimburse Medicare even though it has already reimbursed the beneficiary or other party.

(2)  The provisions of paragraph (i)(1) of this section also apply if a third party payer makes its payment to an entity other than Medicare when it is, or should be, aware that Medicare has made a conditional primary payment.

42 C.F.R. § 411.24(i). In Counts I and II, the United States claims it is entitled to remedy under the double payment regulation because the RSP Defendants are third-party payers who are "required or responsible" to reimburse HCFA  under a primary plan of self-insurance.  Complaint,  ¶¶ 30, 43-44; United States' October 20, 2000, Response, pp. 36-37 (Doc. 41). The RSP Defendants argue the government's claims in Counts I and II must be dismissed because:  (1) the double payment remedy is only available against insurers;  (2) the double payment remedy is only available when an insurer makes a payment to a

Medicare beneficiary with knowledge that the beneficiary owes money to the government; and (3) the double payment remedy is available only when the government has first tried and failed to recover from the beneficiary who received the payment.

### 1.    Are the RSP Defendants MSP Insurers?

The courts have uniformly recognized that the MSP statute's clear purpose was to grant the government a right to recover Medicare costs from insurance entities. *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 146 n.22 (D.D.C. 2000)(collecting cases); *Dow Corning*, 250 B.R. at 337 n.22 (unless alleged tortfeasor qualifies as a primary plan or received payment from a primary plan, MSP does not grant right to initiate direct action against it). The express wording of the statute creates a cause of action against insurers and their payees. *See United States v. Rhode Island Insurers' Insolvency Fund*, 80 F.3d 616, 622 n.5 (1st Cir. 1996) (the MSP provision limits reimbursement to recoveries from "primary plans," whose definition lists only entities that are clearly "within" the insurance industry).

The United States argues it can reach the RSP Defendants even though they are not insurance companies because they are self-insured,[9] in whole or in part, "against the risk of products liability claims by breast implant recipients."  Complaint ¶¶ 43-44.[10]

---

[9]A self insured plan can include the plan of an "entity engaged in a business, trade, or profession. . . ." 42 C.F.R. § 411.50(b).

[10]The RSP Defendants vigorously dispute the allegation that they are self-insured, and argue that the United States is fully cognizant of the RSP Defendants' insured status. The United States correctly argues that the court must take as true its allegation that the RSP Defendants are self-insured on this motion to dismiss under Fed. R. Civ. P. 12(b)(6). The court notes that the United States' allegation that the RSP Defendants are self-insured or self-insured in part must "to the best of the [signer's] knowledge and belief, formed after an inquiry reasonable under the circumstances . . . have evidentiary support, or if specifically so identified, [be] likely to have evidentiary support after a reasonable opportunity for further investigation or study."  Fed. R. Civ. P. 11(b).

The United States' claim that the RSP Defendants are "self-insured" was initially based on a theory that the RSP settlement was the "plan" of self-insurance. It has now abandoned that claim[11] and relies solely on the argument that the RSP Defendants themselves are a self-insured "plan" in that they pay a policy deductible or have made payments out of retained earnings. Complaint ¶ 43. This court does not agree that these payments, without more, constitute a "plan" of self-insurance. *See In re Orthopedic Bone Screw Prod. Liab. Litig.*, No. MDL 1014 (E.D. Pa. June 29, 2001) (Memorandum and Pretrial Order No. 2000); *In re Diet Drugs Prods. Liab. Litig.*, No. MDL 1203, CV 99-20593, 2001 WL 283163 at *9-11 (E.D. Pa. March 21, 2001)(Bechtle, J.).

A self-insured plan is defined by regulation as a "plan under which . . . a[n] entity carries its own risk instead of taking out insurance with a carrier." 42 C.F.R. § 411.50(b). A "plan" is "any arrangement, oral or written, by one or more entities, to provide health benefits or medical care or assume legal liability for injury or illness." 42 C.F.R. § 411.21. Therefore, the regulatory language defining "self-insured plan" connotes some type of formal arrangement by which funds are set aside and accessed to cover future liabilities. *See In re Diet Drugs*, 2001 WL 283263 at *10; *Dow Corning*, 250 B.R. at 339. Furthermore, the HCFA itself has stated that "the mere absence of insurance purchased from a carrier does not necessarily constitute a 'plan' of self insurance." 54 Fed. Reg. 41727 (Oct. 11, 1989).

---

[11]On October 20, 2000, the government filed a "Notice of Correction" in which it requested deletion of its contention that the RSP and other opt-out settlements were primary plans. (Doc. 41). Accordingly, this court need not determine whether the RSP Settlement is a "primary plan" of self-insurance. The court notes, however, that the settlement does not provide for reimbursement of medical expenses. Rather, it provides specific compensation upon proof of certain symptoms or conditions without regard to actual medical expenses incurred by the claimants. The defendants did not concede liability for the plaintiffs' medical conditions in the settlement, and the United States has not claimed there was any other evidence that the claimants' medical conditions and related medical expenses were caused by breast implants.

*See generally Thompson v. Goetzman*, 2001 WL 771012 at *2 (N.D. Tex. 2001) (Lynn, J.) Accordingly, payments of deductibles or payments out of retained earnings, without more, do not constitute a "plan" of self-insurance.[12]

Moreover, having abandoned its claim that the RSP settlement fund is a primary plan of self-insurance, the United States continues to claim that the RSP settlement and other opt-out settlements "establish that the RSP Defendants are required or responsible to reimburse HCFA for its conditional payments." United States Response, p. 36 (Doc. 41). This court agrees with the RSP Defendants, in that "[i]f the obligation to pay arises from the RSP and opt-out settlements, as is alleged in the Complaint, and if neither the RSP nor the opt-out settlements are primary plans - as the government now concedes - then the RSP Defendants cannot be third party payers because their obligation to pay does not arise 'under a primary plan.'" 42 U.S.C. § 1395y(b)(2)(B)(ii). RSP Response of October 31, 2000. (Doc. 43).

### 2.    The Third Party Payer's Knowledge.

The RSP Defendants argue the double payment remedy is only available to the United States when an insurer makes a payment to a Medicare beneficiary with knowledge that the beneficiary owes an obligation to reimburse the government for medical services that were

---

[12]The government argues that deductibles and payments out of general assets can be plans of self-insurance because an entity need not carry its "entire" risk, only its "own" risk under § 411.50(b). However, that argument ignores the portion of the same regulatory definition requiring that the self-insurance must be "instead of" taking out insurance with a carrier. 42 C.F.R. § 411.50(b). The government also argues that the definition of "liability insurance payment" in § 411.50(b) amounts to a regulatory recognition that business entities are routinely self-insured for part of a risk, because it provides that the insurer's payment and the insured's deductible are equally considered to be "liability insurance payments." However, this court is not satisfied that the specific inclusion of deductibles within the definition of "liability insurance payments" amounts to an implied inclusion of deductibles within the definition of "self-insured plan." In fact, it would seem that the specific inclusion in one place supports an argument for a specific exclusion in the other. Finally, as stated in the main text, the government's arguments ignore the requirement that self-insurance be pursuant to a "plan" to provide health benefits or medical care or assume legal liability for injury or illness.

paid by the United States.[13] Accordingly, they argue Counts I and II must be dismissed because the United States has not averred the RSP Defendants made payments to Medicare beneficiaries who they knew to be such beneficiaries. The United States denies that it is required either to plead or to prove that the RSP Defendants acted with knowledge. It claims the RSP Defendants are liable for a second payment to the United States because they were required by law to have ascertained whether any claimant was a Medicare beneficiary and to have ensured that payment was made to the United States before payment was made to a claimant. Complaint, ¶¶ 41, 70. The RSP Defendants counter that they have no duty to investigate any claimant's Medicare history.[14]

In *HIAA v. Shalala*, 23 F.3d 412 (D.C. Cir. 1994), the D. C. Circuit considered challenges by health insurers to various regulations HCFA promulgated to implement the MSP statute. The court found one HCFA regulation invalid because it purported to permit a direct right of action against third-party payers who were not contractually "required or responsible" to pay under a primary plan. *HIAA*, 23 F.3d at 419-420 (applying language in 42 U.S.C. § 1395y(b)(2)(B)(ii)(the direct right of action)). Third party payers who make payments according to contractual provisions are no longer "required or responsible to pay" under that contract and not subject to suit under (b)(2)(B)(ii). Therefore, once the third party

---

[13] According to the terms of the RSP settlement, the defendants are not privy to the information about the claimants' identities. The court appointed a special master to serve as claims administrator, and the claims administrator receives the information necessary to determine who is entitled to settlement payments. Order 27, RSP ¶¶ H - J. If the defendants knew the identities of the claimants, they still would not have the necessary information to conclude which claimants are Medicare beneficiaries. That information is in the hands of HCFA.

[14] The Escrow Agent characterizes the task of identifying women who might have received federal funds for medical treatment as "herculean." Escrow Agent Submission of June 14, 2000, Doc. 31, p.11.

payer satisfies its contractual obligations, the United States may not claim a second payment unless it can meet the requirements of the double payment regulation.

The *HIAA* court upheld the double payment regulation based on language limiting HCFA's recovery of a second payment to those situations when the third party payer "is, or should be aware" of Medicare's conditional payment.  The court observed  the regulation was within the United States' subrogation rights under §1395y(b)(2)(B)(iii), since a "common feature" of subrogation law is the general principal that an insurer may recover a second time from a tortfeasor who makes payment to the wrong party with knowledge of the insurance company's payment. *See* 16 Couch on Insurance 3d, §§ 224:113, 224:117, 224:121 (3d ed. 2000).  Accordingly, the government must proceed as a subrogee against third party payers who have already paid according to the contract, and are no longer "required or responsible" to pay.  As subrogee, the government is limited to proceeding against third-party payers who have made their payment with knowledge of the United States' claim.[18]

The United States contends *HIAA* does not apply because the court considered only part of the double payment regulation, § 411.24(i)(2), and that subsection applies only to employee group health plans paying routine, undisputed claims.  It argues that under § 411.24(i)(1) it may collect a second payment from liability insurance companies regardless of the insurers' knowledge.  However, the *HIAA* court clearly considered the entire double payment regulation without limiting its holding to a specific subsection or to undisputed payments by employee group health plans.  Moreover, the *HIAA* court upheld the entire

---

[18] Accordingly, the United States must also name its insured to bring an action under the double payment regulation. *See* Part III (A) *supra*.

regulation based on its conclusion that the regulation was an expression of the United States'
subrogation rights. The construction of the regulation advanced by the United States here,
although plausibly within the wording of the regulation, would render the regulation in
excess of the government's subrogation rights under the MSP statute. Congress authorized
recovery only from an entity that has already satisfied its obligations under a primary plan
to the extent such recovery is authorized by the common law subrogation rights adopted in
42 U.S.C. § 1395y(b)(2)(B)(iii). *HIAA*, 23 F.3d at 417-18, 421-22.

Accordingly, the United States cannot bring a direct action under § 1395y(b)(2)(B)(ii)
against an entity that has already satisfied its contractual obligations to the beneficiary.
Against such entities, the United States must bring a subrogation action as implemented by
the double payment regulation, and must plead and prove the third party payer knew or
should have known of Medicare's conditional payments at the time payment was made to
the beneficiary.

The United States further argues the RSP Defendants' knowledge of the MSP statute
and of the United States' claim that it made conditional payments to unknown breast implant
claimants was sufficient to trigger a duty on the part of the defendants to investigate. It also
contends the RSP Defendants structured the settlement in a manner so as to avoid obtaining
knowledge.[16] However, the government has not cited any authority to support its argument

---

[16] As discussed above, this class action settlement was not, and could not have been, the unilateral product of the RSP Defendants. To the extent the United States has raised a question of fact about the RSP Defendants' intent, it has not established the RSP Defendants were obliged to assume the burden of gathering information about Medicare beneficiaries for HCFA. If the RSP Defendants had obtained knowledge of the claimants' identities, simply knowing the names of the claimants and their medical condition would not have been the "information necessary to draw the conclusion that Medicare . . . made a conditional primary payment," since the RSP Defendants still would not have known which claimants were Medicare beneficiaries. *HIAA*, 23 F.3d at 418.

that the RSP Defendants were responsible for collecting the information needed to help the United States recover its conditional payments. The HCFA is the only entity charged with a duty to identify secondary payer situations under the MSP statute. *See* 42 U.S.C. § 1395y(b)(5)(requiring HCFA to collect and disseminate information about Medicare beneficiaries, including, *inter alia*, sending questionnaires to individuals applying for benefits "to obtain information on whether the individual is covered under a primary plan . . ."). Although the regulations require a third party payer to give notice when it "learns" HCFA has made a payment for which the third party payer was responsible, 42 C.F.R. § 411.25(a), the HCFA considers the regulation "to embrace a situation where a third-party payer 'receives the information necessary to draw the conclusion that Medicare has made a conditional payment . . . .'" *HIAA*, 23 F.3d at 422. The "should be . . . aware" language in the double payment regulation means the third party payer must, at the time of the payment to the wrong party, possess "direct information" of Medicare's conditional payment, or have "information necessary to draw the conclusion that Medicare . . . made a conditional primary payment." *HIAA*, 23 F.3d at 418 (quoting from declaration of HCFA representative Olenick). The knowledge that the large group of Medicare beneficiaries and the large group of RSP claimants overlapped to some degree was not sufficient to give the RSP Defendants notice of any specific Medicare payments. Nothing in the statute or regulations supports the United States' claim that the third party payer is required to undertake an investigation for the benefit of the government to discover Medicare's involvement.[17]

_____

[17]HCFA submitted a brief and a declaration to the *HIAA* court which the RSP Defendants have provided to this court. HCFA's Paul Olenick told the *HIAA* court:

The United States also argues that the extent of the RSP Defendants' actual knowledge is a factual question that cannot be decided on a motion to dismiss. The plaintiff has, however, affirmatively claimed that the RSP Defendants "did not ascertain" whether any claimant had Medicare benefits, and the government acknowledges the RSP Defendants did not have access to this information due to the confidentiality provisions in the RSP settlement. A motion to dismiss is proper where the plaintiff has pled facts defeating its claim. *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986) ("a claim may also be dismissed if a successful affirmative defense appears clearly on the face of the pleadings").

### 3.    Reimbursement From Medicare Beneficiaries.

The RSP Defendants claim that the United States must plead and prove that it has sought recovery from its Medicare beneficiaries before proceeding against third party payers under the double payment regulation. *See* 42 C.F.R. § 411.24(i) (requiring third party payer to make a second payment to Medicare "[i]f Medicare is not reimbursed" by the beneficiary")[18]; 54 Fed. Reg. 41716, 41719 (Oct. 11, 1989) (HCFA has a right to recover its

_____

Since the regulation applies only when the third party payer already <u>has</u> the knowledge that the regulation requires it to report, compliance does not require third party payers to develop procedures for investigating possible Medicare involvement.

RSP Ex. C, Olenick Decl. ¶ 21 (emphasis in original). In its brief submitted to the *HIAA* court, the United States represented that the recovery under the double payment regulation "would only be possible if, at the time the third party makes its own payment it 'is, or should be, aware' that Medicare has made a conditional payment," and that HCFA construed this standard to mean the third party payer "actually has in its possession information that directly establishes that Medicare has made such a payment." RSP Exhibit G, Brief for the Appellees at 41.   The government contends this court cannot consider these documents in deciding this motion to dismiss, *but see Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1276 (11th Cir. 1999) (approving practice of judicially noticing publicly filed documents with SEC on a motion to dismiss). The court has, however, found consideration of these materials is not necessary in light of its conclusion that the double payment regulation must be applied consistently with general subrogation principles and the discussion of the government's position in *HIAA*.

[18] The United States argues it has multiple ways to recover its conditional payments, and there is no specific order of recovery. However, the language in the text is from § 411.24(i) specifically, which is the only regulation permitting the government to recover from third party payers who have already made a payment. The

payment from an entity that has already reimbursed the beneficiary if HCFA is unable to recover conditional Medicare payments from the beneficiary); <u>Faulty Information System Costs Millions in Medicare Payments: Hearings Before the Subcomm. on Regulation and Government Information of the Comm. on Governmental Affairs, United States Senate</u>, 103d Cong. 1st Sess. 37 (1993)(prepared statement of Carol J. Walton on behalf of HCFA)(an insurer "may rebut the demand for repayment" by demonstrating "that it has . . . made a primary payment on the claim, in which case Medicare will pursue collection against the entity that received two . . . payments.")(RSP Exhibit H).[19]   The legislative history supports this conclusion, noting that the "bill establishes the statutory right of Medicare to recover directly from a liable third party, if the beneficiary himself does not do so." H.R. Rep. No. 98-432 Part II, at 1803 (1984).[20]

---

other regulations cited by the government are simply irrelevant to the issue here.

[19]Again, the RSP Defendants cite to the *HIAA* brief and Olenick declaration, in which HCFA represented that it would first try to recover against a beneficiary before attempting to recover a second payment from an insurer. As noted above, the United States argues these materials are extrinsic to the complaint and should not be considered in this motion. The court has found consideration of these materials is not necessary in light of its conclusion that the MSP statutes and regulations require HCFA to attempt collection from its Medicare beneficiaries prior to bringing suit against the insurer. Accordingly, the court has not considered the United States' argument that it cannot be judicially estopped from taking inconsistent positions before this court and the *HIAA* court. *But see Mazza v. Secretary of HHS*, 903 F.2d 953, 959 (3d Cir. 1990)(rejecting agency's asserted interpretation of statute and regulations where it "flatly contradict[ed] the position that the agency had enunciated" in prior litigation "closer to the enactment of the governing statute"); *Pfaff v. United States HUD*, 88 F.3d 739, 748 (9th Cir. 1996)(rejecting new interpretation of statute where department's "inconsistent and misleading representations" had "led [those regulated by the statute] down the garden path").

[20]The United States argues that the statutory and regulatory scheme specifically contemplates HCFA will proceed against the third party prior to proceeding against the beneficiary in some cases. The court agrees that HCFA may proceed with a direct action against a third party payer who has not yet made any payment to the beneficiary or the provider. 42 U.S.C. § 1395y(b)(2)(B)(ii); 42 C.F.R. § 411.23. However, the United States has not pointed to any provision of the regulations that permits it to collect a second payment from a third party without first attempting to collect from the beneficiary.

The United States argues it has made attempts to recover from beneficiaries. *See* Declaration of Barbara Wright in support of motion for preliminary injunction at ¶¶ 10-12, 17-20, 27. Nothing in the complaint or the materials subject to judicial notice supports the RSP Defendants' assertion that the United States has made no effort to recover from Medicare beneficiaries. Accordingly, this issue cannot be resolved on a motion to dismiss.

**B.      Count II - The Claim For Double Damages.**

In addition to its claim for a double payment from the RSP Defendants, the United States claims it is entitled to double damages pursuant to 42 C.F.R. § 411.24(c)(2), which provides:

> If it is necessary for HCFA to take legal action to recover from the primary payer, HCFA may recover twice the amount [of the Medicare primary payment].

*Id.* However, double damages are available to the United States only when an entity that is required or responsible to pay under a primary plan "fails to provide for primary payment." 42 U.S.C. §§ 1395y(b)(2)(B)(ii), (b)(3)(A); *United States v. Sosnowski*, 822 F. Supp. 570, 573 (W.D. Wis. 1993). As discussed above, there is considerable doubt whether the RSP Defendants paid under a primary plan.

The RSP Defendants also argue that, if they were a primary plan, they have satisfied any contractual obligation to make their payment. The United States' claim to double damages must be brought "in accordance with [the provision for a private cause of action in] paragraph (3)(A) . . . ." *See* 42 U.S.C. §§ 1395y(b)(2)(B)(ii); (b)(3)(A). Paragraph (b)(3)(A) permits double damages when "a primary plan . . . fails to provide for primary payment (or appropriate reimbursement). . . ." *Id.* The RSP Defendants claim they have

Page 21 of 36

made their "primary payment" to the breast implant claimants.  The United States argues, without citation, that the primary payment must be made to the medical care provider.  It further argues that it may seek double damages when the primary payer fails to make "appropriate reimbursement" to Medicare.

The primary payer must either make a primary payment or reimburse Medicare's conditional payment to avoid double damages.  42 U.S.C. § 1395y(b)(3)(A).  It is undisputed that the RSP Defendants have made payments to breast implant claimants.  There is no statutory or regulatory support for the United States' argument that payment must be made to the medical care provider to avoid double damages.  Neither is there any support for the United States' argument that reimbursement must be made in addition to payment to avoid double damages.  In explaining § 411.24(c), HCFA said "any claimant may seek double damages from any entity responsible for payment that fails to pay primary benefits as required by the statute." 60 Fed. Reg. 45344, 45345 (Aug. 31, 1995).

The claim of the United States for double damages in Count II of the complaint is due to be dismissed.

### C.      Count V - The Claim for Declaratory Relief under the MSP.

In Count V, the United States requests a declaration that "the RSP Defendants are liable to reimburse HCFA for past payments made to breast implant claimants, whether through the RSP, as opt-out settlement payments, or non-MDL payments . . . that the RSP Defendants must give the HCFA notice of all payments to Medicare beneficiaries . . . and

. . . that all defendants must ensure before payment is made to any Claimant that appropriate payment is made to the United States."

To the extent the United States is seeking a declaration with regard to past payments made to RSP claimants, the claim is foreclosed for the same reasons the other MSP claims are foreclosed.  The United States also claims it is entitled under 42 C.F.R. § 411.25 to a declaration that the RSP Defendants must give notice of all future payments to Medicare beneficiaries and "ensure" that the United States is paid first.  However, 42 C.F.R. § 411.25 only applies to a "third party payer" who "learns" Medicare has made a specific payment for a given item or service.  *See* 59 Fed. Reg. 4285, 4286 (Jan. 31, 1994).  At the most, the regulation requires the third party payer to give notice when it "is, or should be, aware" of Medicare's primary payment, but it does not, by its express terms, require any type of private monitoring.  *See HIAA*, 23 F.3d at 421-22.  Neither the MSP nor the regulation impose a duty on the RSP Defendants to investigate, or "ensure" that payment is made to the United States before payment is made to any Claimant.  Accordingly, Count V is due to be dismissed.

**V.     Counts III, VI, and VII- The Claims Against the RSP Defendants and the Escrow Agent as Entities that Received Payment.**

In Count III, the United States claims that the RSP Defendants are required to reimburse HCFA as entities that "received payment," even if they are not third party payers. Compl. ¶¶ 63-65.  In Count VI, the United States claims the Escrow Agent is liable to reimburse the government as an entity that received payment. Compl. ¶¶ 71-74. In Count VII, the United States requests an order enjoining the Escrow Agent from continuing to make

payments to RSP claimants pending inquiry into the Medicare eligibility of claimants, to stop disbursements of payments to claimants who are found to have been eligible for Medicare benefits, to disclose the identities and information concerning all payments made or contemplated to be made to Medicare beneficiaries, and to implement procedures to ensure that the United States' claims under the MSP statute are provided for prior to disbursement of further funds from the MDL Settlement Fund. In its submission of July 14, 2000, the United States expressly disavowed any claim to damages from the Escrow Agent. *Id.* at 25.

The defendants contend the United States' claims against them as entities that "received payment" must be dismissed because (1) there is no allegation they knew or should have known of any conditional payments by Medicare to any claimant;[21] (2) an entity that merely processes payments is not subject to liability under the MSP statute;[22] and (3) the United States does not have a claim against property under the MSP statute.[23]

Paragraph (2)(B)(ii) names only two entities subject to suit by the United States; entities that are "required or responsible" to pay and entities that "received payment." The United States has previously unsuccessfully argued that intermediaries that receive and pass

---

[21] As discussed in Part IV(2), the HCFA finds this condition met only when a "third party payer 'has in its possession direct information that Medicare has made a conditional primary payment.'" *HIAA*, 23 F.3d at 418 (quoting Declaration of Paul Olenick). The United States has not shown that the MSP statute imposes a duty to investigate and discover Medicare conditional payments.

[22] The United States avers that the Escrow Agent "received payments from the RSP Defendants and/or their insurers in order to pay breast implant claims. (Compl. ¶ 47). The United States avers that the "RSP Defendants received payments from products liability insurers or caused such payments to be made in order to compensate Claimants for their alleged breast implant-related injuries." Complaint, ¶ 64. Thus, it claims the defendants received and passed on the funds Medicare is claiming, not that the defendants have possession of the funds.

[23] As discussed in Part III, *supra*, the United States must also identify its Medicare beneficiaries and the items or services it provided to proceed under the MSP with either a direct action or a subrogation action under 42 U.S.C. § 1395y(b)(2)(B).

on funds are "required or responsible" to pay.  *See HIAA*, 23 F.3d at 415-17; *United States v. Travelers Ins. Co.*, 815 F. Supp. 521, 523-24 (D. Conn. 1992); *Provident Life and Accident Ins. Co. v. United States*, 740 F. Supp. 492, 503-04 (E.D. Tenn. 1990); *United States v. Blue Cross and Blue Shield of Michigan*, 726 F. Supp. 1517, 1521-22 (E.D. Mich. 1989).  These courts concluded that Congress did not intend to make these entities subject to recovery action.[24]  This court agrees that such entities, even to the extent they "received payment" as is now argued by the United States, are not liable for Medicare conditional payments.[25]

Courts must give the words in a statute their contemporary, common meaning absent an indication Congress intended them to bear some different import. *Williams v. Taylor*, 529 U.S. 420, 431-2 (2000).  In ordinary usage, the term "receive" connotes an attendant degree of possession.  Webster's New International Dictionary, 1894 (3d ed. 1976)(defining "receive," *inter alia*, as "to take possession or delivery of").  "Payment" is the "performance of an obligation" or the "money or other valuable thing so delivered in satisfaction of an obligation."  Black's Law Dictionary, 1150 (7th ed. 1999).  Intermediaries who facilitate the transfer of a payment only receive temporary possession of funds intended for payment; they do not receive permanent possession of funds in satisfaction of an obligation.  Only the

---

[24]The third party administrators and banks discussed in *HIAA v. Shalala*, 23 F.3d 412, 415-17 (D.C. Cir. 1994), assumed no personal financial responsibility for paying the plan's benefits.  "In the context of the MSP scheme . . . it would be wholly unreasonable for HCFA to treat the bank as a responsible payer subject to recovery actions."  *Id.* at 416.  "[T]he existence of contracts under which the financial liability is 'murky' seems an odd justification for imposing it on a party to - by perfectly clear contract - is plainly not liable."  *Id.*

[25]No party has offered any useful legislative history or administrative interpretation with respect to this section of the statute.  Other than its reliance on the "received payment" language from paragraph (2)(B)(ii), the United States has not pointed to any support in the statute or regulations for its claim that entities who merely receive and pass on insurance monies to pay settlement claims are "entities that receive payment" within the meaning of the statute.  The litigation position of agency counsel that is wholly unsupported by regulations, rulings, or administrative practice is not entitled to deference.  *Bowen v. Georgetown University Hosp.*, 488 U.S. 204, 211 (1988).

ultimate payee receives funds in satisfaction of an obligation. Thus, the very language relied upon by the United States does not support its claim. Although intermediaries technically "receive" funds in the course of making transfers between the payer and payee, they do not in any sense receive a "payment."

The United States' allegations establish that the RSP Defendants and the Escrow Agent, if they are liable under the MSP at all, are liable as payers and not payees. Nothing in the language or general intent of the statute indicates Congress intended an entity that received interim possession of funds in the process of making payment to be liable as an entity that "received payment." Common sense dictates that such entities are aligned with the entity "required or responsible" to pay and not with the payee.[26]

Furthermore, reading the "received payment" clause in conjunction with the remaining portions of paragraph (2)(B)(ii) supports the view that Congress intended to permit recovery from only those entities who were ultimately responsible to make payment or who ultimately received payment, and not from intermediaries to the transaction. First, the stated intent of paragraph (2)(B)(ii) is to permit the government to "recover payment." *Id.* The most straightforward way to "recover" payment is to proceed against those entities most likely to have possession of the funds that should have been used to reimburse Medicare's conditional payment. The government does not have a reasonable claim that it is "recovering" payment from an entity that is not holding the funds intended for the payment. There is no language that can be construed to support the United States' claim

---

[26]The Escrow Agent is more correctly characterized as a neutral intermediary, who owes a duty to all the parties to the transaction. *See* 28 AmJur 2d, Escrow § 20 (2000).

that Congress intended to impose liability for Medicare's conditional payments on an innocent entity that merely received and passed on funds.   Such strict liability is extraordinary, and the argument that Congress imposed this kind of liability *sub silentio* is absurd.

Second, under paragraph (2)(B)(ii) the payer can be sued only when it is "required or responsible" to pay, so that once it makes payment and is no longer "required or responsible" it cannot be reached under the statute.   In view of this specific treatment of payers, it is most unlikely that Congress intended to create greater liability for intermediaries who merely receive and pass on payment on behalf of the payer.

Third, paragraph (2)(B)(ii) specifically names two examples of entities that received payment, physicians and providers.   Physicians and providers are typically final receivers of the third party payment, not pass-through payees.   The specific listing of entities who are likely to be in final possession of the funds and the exclusion of entities who merely receive and pass on possession indicate pass-through payers who are not subject to suit as entities that received payment.

Finally, the only parties named in paragraph (2)(B)(ii) that typically function as pass-through payers, third party administrators, are liable only if they have access to the funds claimed for Medicare reimbursement.   It is unlikely that Congress intended to impose a greater liability on similarly situated entities through more general language in the statute. *And see HIAA*, 23 F.3d at 415- 417 (prior to amendment imposing limited liability on third

party administrators, finding third party administrators are not properly subject to liability under the MSP even though they are literally "required or responsible" to pay).[27]

Moreover, nothing in the HCFA's own regulations supports the argument presently offered by the government. If the agency has ever previously interpreted paragraph (2)(B)(ii) to permit the extraordinary liability it argues here, it has not said so. The HCFA regulation providing for recovery from parties that receive third party payments provides the United States "has a right of action to recover its payments from any entity, including a beneficiary, provider, supplier, physician, attorney, State agency or private insurer that has received a third party payment." 42 C.F.R. § 411.24(g). The entities listed in § 411.24(g) are typical "final recipients" of third party payments. The list's inclusion of ultimate payees and exclusion of pass-through payers indicates HCFA recognizes it is permitted recovery from entities that ultimately received payment, not from entities who no longer hold funds to which HCFA has a claim. An entity that has received payment and "already reimbursed the beneficiary or other party" must be pursued under HCFA's "special rules" that are applicable only when third party payers have knowledge or imputed knowledge. 42 C.F.R. §§ 411.24(h), 411.24(i).[28]

---

[27] Subsequent to the *HIAA* decision, paragraph (2)(B)(ii) was amended to permit recovery from third party administrators, provided the third party administrator is able to recover from the "employer or group health plan" or is employed by the "employer or group health plan" and is not providing administrative services due to bankruptcy or insolvency. 1997 Amendments, Pub. L. No. 105-33, § 4633(a); 42 U.S.C. § 1395y(b)(2)(B)(ii). As discussed in the text, the amendment supports this court's interpretation of paragraph (2)(B)(ii), since it permits recovery only from third party administrators who have access to the funds the government is trying to recover.

[28] Subsection 411.24(h) provides, "[i]f the beneficiary or other party receives a third party payment, the beneficiary or other party must reimburse Medicare within 60 days." Subsection 411.24(i) provides that "if Medicare is not reimbursed as required by paragraph (h) . . . the third party payer must reimburse Medicare even though it has already reimbursed the beneficiary or other party."

Accordingly, this court finds the only entities that may be sued by the United States pursuant to paragraph (2)(B)(ii) are those entities who are ultimately responsible to pay or who ultimately receive payment. This conclusion is supported by reading paragraph (2)(B)(ii) as a whole rather than focusing on the language in a single clause, and by adhering to the stated and implied intent of Congress that the statute was designed to effectuate. Nothing in the MSP statute or the HCFA's regulations supports this action against entities who have received and passed on payment.

The United States also argues HCFA will be severely hamstrung in effectuating Congress's goal of making Medicare a secondary payer if this court analogizes the Escrow Agent to a third party administrator, since the Escrow Agent is the only party with knowledge of the claimant's identities. However, the Escrow Agent is not the intended target of the MSP, and proceeding against the Escrow Agent will not effectuate Congress's intent.

The United States specifically avers that the RSP Defendants and the Escrow Agent receive and pass on funds to claimants. The orders in MDL 926 further establish that the Escrow Agent is required to hold and administer the RSP funds, and to disburse the funds in accord with the terms of the orders entered in MDL 926, but he is not ultimately liable for payment and he does not ultimately receive payment. *See, e.g. In re: Silicone Gel Breast Implant Products Liability Litigation* (MDL 926), No. CV 92-N-10000-S, Orders of November 4, 1993; April 11, 1994; November 23, 1994; March 25, 1996; May 31, 1996; July 15, 1996; September 25, 1999. The United States has not alleged facts that, if proved, would entitle it

to recover from the RSP Defendants or the Escrow Agent as entities that "received payment."[29] Accordingly, Counts III, VI, and VII are due to be dismissed.

## VI.   Counts VIII and IX - The MCRA Claims.

In Count VIII, the United States claims it is entitled to equitable relief under the Medical Care Recovery Act ("MCRA"), 42 U.S.C. § 2651 *et seq.*, requiring the Escrow Agent to implement procedures to identify United States' beneficiaries who are eligible for RSP and Common Benefit Fund payments, and enjoining the Escrow Agent from making further payments to claimants pending inquiry into the eligibility of claimants to medical care provided or paid by the United States. In Count IX, the United States demands payment from the MDL 926 Settlement Fund of its reasonable costs of providing medical care to RSP claimants.

The MCRA provides, in pertinent part:

> In any case in which the United States is authorized or required by law to furnish or pay for hospital, medical, surgical or dental care or treatment . . . under circumstances creating a tort liability upon some third person . . . to pay damages therefor, the United States shall have a right to recover (independent of the rights of the injured or diseased person) from said third person, or that person's insurer, the reasonable value of the care and treatment so furnished, to be furnished, paid for, or to be paid for and shall, as to this right be subrogated to any right or claim that the injured or diseased person . . . has against such third person. . . .

42 U.S.C. § 2651(a).

---

[29] The United States denies it is bringing this action against the Common Benefit Fund or the MDL 926 Settlement Fund and relies solely on its claims against the Escrow Agent as an entity that "received payment." It points out that its ultimate objective of recovering money does not convert its claim into an action against property. *See e.g., Cox v. Shalala,* 112 F.3d 151, 154-55 (4th Cir. 1997)(permitting recovery from a settlement fund where funds are in an escrow account); *Waters v. Farmers Texas County Mut. Ins. Co.,* 9 F.3d 397 (5th Cir. 1993)(same); *Zinman v. Shalala,* 835 F. Supp. 1163, 1171 (N.D. Cal. 1993), *aff'd* 67 F.3d 841 (9th Cir. 1995).

> The United States may, to enforce a right under subsections (a), (b), and (c) of this section . . . (2) institute and prosecute legal proceedings against the third person who is liable for the injury or disease or the insurance carrier or other entity responsible for the payment or reimbursement of medical expenses or lost pay . . ."

42 U.S.C. § 2651(d).[30]

The defendants argue MCRA claims must be brought against a tortfeasor or the insurance company of a tortfeasor. The MCRA does not permit the United States to pursue its claims against a settlement fund.[31] *Holbrook v. Andersen Corp.*, 996 F.2d 1339, 1341-42 (1st Cir. 1993); *United States v. Farm Bureau Ins. Co.*, 527 F.2d 564, 566 (8th Cir. 1976); *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 176 F.R.D. 158, 179 (E.D. Pa. 1997); *United States v. Cipinko*, 1994 U.S. Dist. LEXIS 15084, 1994 WL 589455, *1 (N.D. Cal. 1994); *GEIC v. Andujar*, 773 F. Supp. 282, 286 (D. Kan. 1991); *United States v. Jackson*, 572 F. Supp. 181, 184-85 (N.D. Mich. 1983).

Pointing to 42 U.S.C. § 2651(d), the United States argues the1996 Amendments to the MCRA permit it to sue the "insurer or other entity responsible for the payment or reimbursement" of medical expenses. However, a complete reading of § 2651 refutes the United States' claim. A subsection (d) enforcement action may be brought only to enforce

---

[30]Prior to 1996 MCRA amendments, the MCRA provided for recovery from the tortfeasor only. The 1996 Amendments provided for recovery from the tortfeasor or the tortfeasor's insurer and included the right to bring action against the "insurance carrier or other entity responsible for the payment or reimbursement of medical expenses or lost pay." Pub. L. 104-201, § 1075(b)(1) and (2) (1996).

[31]The United States points to the settlement agreement, arguing that the injured person cannot affect the Government's MCRA claim by giving a release to the tortfeasor and that it may sue the Escrow Agent because the RSP Defendants "knowingly and voluntarily" transferred responsibility to pay medical expenses to the Escrow Agent. However, the settlement agreement did not affect the United States' rights in any way, neither extinguishing the right to proceed against the RSP Defendants as tortfeasors, nor creating a right to proceed against the Escrow Agent as custodian of the settlement funds.

the United States rights under subsections (a), (b) and (c). 42 U.S.C. § 2651(d). Subsection (a) specifically limits the United States' right of recovery to "said third person [tortfeasor], or that person's insurer." 42 U.S.C. § 2651(a). Subsections (b) and (c) do not broaden the United States' rights to permit recovery from a settlement fund. Although the 1996 Amendments expanded the MCRA to reach the insurer of a tortfeasor, there is no indication in the statutory language that Congress intended to change the limitations established in *Holbrook* related to recovery from a settlement fund. Neither has the United States pointed to any legislative history or court decisions supporting its argument that the 1996 Amendments changed the MCRA to permit recovery from a settlement fund. *See In re Diet Drugs*, 2001 WL 283163, *8 (E. D. Pa. March 21, 2001)(Bechtle, J.).

Moreover, even after the 1996 Amendments, the United States' right to recover remains contingent upon a determination that the government paid for medical care under "circumstances creating a tort liability upon some third party." 42 U.S.C. § 2651(a). There has been no such determination in this case, or in any case involving a settlement of tort claims. *Holbrook*, 996 F.2d at 1341.

Furthermore, the Escrow Agent is not "responsible" under the RSP for "payment or reimbursement of medical expenses." The RSP Settlement fund provides specific compensation upon proof of certain symptoms or conditions without regard to the actual medical costs incurred by the claimants. There is no link between the medical care required or obtained by a particular claimant and the amount of money paid by the fund. *See generally, Lindsey v. Dow Corning Corp.*, No. CV 94-P-11558-S (N.D. Ala.)(Order 27). The Common Benefit Fund provides funds for the payment for services and costs incurred

for the common benefit of all silicone gel breast implant claimants, and has no relationship to medical expenses. Furthermore, as discussed above, the Escrow Agent only distributes RSP funds as directed by the court, and thus cannot be said to be "responsible" for the payment of "medical expenses."

The United States alternatively argues that it is a third-party beneficiary of the RSP settlement funds. *See Commercial Union Ins. Co. v. United States*, 999 F.2d 581, 587-88 (D.C. Cir. 1993); *Cockerham v. Garvin*, 768 F.2d 784, 787 (6th Cir. 1985); *United States v. Nation*, 299 F. Supp. 266, 267 (N. D. Okla. 1969). In *Cockerham*, the settlement agreement included a stipulation that the plaintiff would place $20,000 in escrow until he reached a settlement with the government. The *Cockerham* court concluded that the government was a third-party beneficiary of the settlement agreement between the tortfeasor and the injured party. In *Commercial Union*, the tortfeasor's insurer filed an interpleader action and named the United States as one of the competing claimants to the fund in question. The *Commercial Union* court was not concerned with the United States' right to recover from a settlement fund. Similarly, in *Nation*, the parties deposited a disputed portion of settlement funds into the court's registry and the court had only to decide whether the United States would share the disputed funds with the injured party's attorney.

Although it did not allege it was a third-party beneficiary of the RSP, the United States now argues *Cockerham, Commercial Union*, and *Nation* are controlling because the RSP Settlement includes a provision which "can be likened to the stipulation creating the escrow agreement" in *Cockerham*. United States' Opposition of July 14, 2000, p. 42 (Doc. 32). The United States relies on paragraph K.4 of the RSP, which provides:

Page 33 of  36

> Subrogation-type claims by insurers or governmental agencies based on
> payment of medical expenses of participants will, to the extent enforceable
> under applicable laws, be the responsibility of eligible participants; settling
> defendants will have no additional responsibilities to such insurers and
> agencies and will be protected by participants against such claims.

RSP, ¶ K.4. The United States argues it may, through discovery, find the RSP Defendants

compensated claimants for medical care expenses in return for the release in ¶ K.4.

However, even such a discovery would be insufficient. Paragraph K.4 is indistinguishable

from the provision in the *Holbrook* settlement in which the injured party agreed to indemnify

the defendant against the claims of the United States. Unlike the *Cockerham* settlement,

there are no explicit RSP terms setting specific funds aside to cover the government's

claims. The ¶ K.4 indemnity provision does not establish a fund set aside to satisfy the

Government's claim.

The MCRA claims of the United States against the Escrow Agent are due to be

dismissed.

**VII.   The Escrow Agent's Judicial Immunity**.

The MSP and MCRA claims against the Escrow Agent must also be dismissed

because he is not subject to liability for the relief claimed by the United States.

The Escrow Agent is a court-appointed intermediary who performs, on behalf of the

court, as a disinterested conduit of the settlement funds. *See e.g., In re Silicone Gel Breast*

*Implant Prods. Liab. Litig., MDL 926*, CV-92-N-10000-S; Order 27 and Orders of April 11,

1994; November 4, 1993; November 23, 1994; March 25, 1996; May 31, 1996; July 15, 1996;

September 25, 1999; and March 14, 2000. He is not assigned any role in the determination

of benefits to be received by RSP claimants. *Id. See* 28 AmJur 2d, Escrow § 20 (2000). In his

role as an agent of the court, he has been given immunity for acts he takes in good faith, for all payments to claimants made in the RSP, and for all rebate payments from the Common Benefit Fund. *See MDL 926* Orders of May 31, 1996, ¶ 2 and March 14, 2000, ¶ 3. Judges have absolute immunity from damages for actions taken while they are acting in their judicial capacity, unless they acted in the "clear absence" of all jurisdiction. *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978); *Simmons v. Conger*, 86 F.3d 1080, 1084-85 (11th Cir. 1996). The United States argues the Escrow Agent is not a judge, and is not therefore entitled to judicial immunity. However, the Escrow Agent was appointed by the court as a special master to carry out limited judicial functions under the direction of the court. In that role, the Escrow Agent is acting in a judicial capacity and enjoys judicial immunity. Accordingly, claims for damages cannot be maintained against the Escrow Agent.

The claims of the United States against the Escrow Agent in which the plaintiff seeks prospective declaratory and injunctive relief under the MSP and the MCRA are not subject to judicial immunity. However, neither the MSP nor the MCRA permits the United States to bring an action for injunctive or declaratory relief to recover medical costs. The MSP permits the United States to "recover payment" as provided in 42 U.S.C. § 1395y(b)(2)(B)(ii), and the MCRA permits the United States to recover the "reasonable value of the care and treatment" as provided in 42 U.S.C. § 2651(a). Both statutes permit recovery for payments made by the government, not prospective declaratory or injunctive relief. Equitable relief is available only where there is no adequate remedy at law. *Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507, 1518 (11th Cir. 1994). The court is not obliged to entertain a claim for declaratory judgment where the party has an alternative means of relief.

Page 35 of 36

*Angora Enterprises v. Condominium Assn. of Lakeside Village, Inc.*, 796 F.2d 384, 387-88 (11th Cir. 1986); *and see Cunningham v. Adams,* 808 F.2d 815, 821 (11th Cir. 1987) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies"). The United States has legal remedies available under the MSP and the MCRA, and its claims for equitable and declaratory relief should, therefore, be dismissed.

**VIII.   Conclusion.**

A complaint must "show[] that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and a complaint based upon "conclusory allegations and unwarranted deductions of fact" is subject to dismissal under Rule 12(b)(6).   *South Fla. Water Mgt. Dist. v. Montalvo*, 84 F.3d 402, 408 n. 10 (11th Cir. 1996). The court may dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action. *Marshall Cty. Bd. of Ed. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

As discussed herein, that is the present case. Thus, this action is due to be dismissed with prejudice.  A separate order will be entered.

Done, this ___*26*___ th of September, 2001.


Edwin Nelson
United States District Judge


Page 36 of 36